1  Terry M. Goldberg, Esq., Cal. S.B. No. 55674
   (email: tgoldberg@goldbergandgage.com)
2  Bradley C. Gage, Esq., Cal. S.B. No. 117808
   (email: bgage@goldbergandgage.com)
3  Milad Sadr, Esq., Cal. S.B. No. 245080
   (email: msadr@goldbergandgage.com)
4  **LAW OFFICES OF GOLDBERG & GAGE**
   A Partnership of Professional Law Corporations
5  23002 Victory Boulevard
   Woodland Hills, California 91367
6  Tel: (818) 340-9252  Fax: (818) 340-9088

7  Attorneys for Plaintiffs,
   MICHAEL RATHBUN & JAMES SEXTON

8

FILED
CLERK, U.S. DISTRICT COURT
APR 23 2013
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

9              **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11                                    **CV13-02863-JFW (Ex)**

12  MICHAEL RATHBUN; JAMES          ) CASE NO.:
    SEXTON,                         )
13                                  ) **COMPLAINT FOR DAMAGES AND**
                  Plaintiff,        ) **DEMAND FOR JURY TRIAL**
14                                  )
    v.                              ) 1.    FIRST AMENDMENT
15                                  )       RETALIATION
    COUNTY OF LOS ANGELES;          ) 2.    VIOLATION OF DUE PROCESS
16  LEROY BACA, IN HIS INDIVIDUAL   )       RIGHTS THROUGH MALICIOUS
    CAPACITY AND AS SHERIFF WITH    )       PROSECUTION
17  THE LOS ANGELES COUNTY          ) 3.    CONSPIRACY TO VIOLATE
    SHERIFF'S DEPARTMENT; PAUL      )       PLAINTIFF'S FIRST &
18  TANAKA, IN HIS INDIVIDUAL       )       FOURTEENTH AMENDMENT
    CAPACITY AND AS                 )       RIGHTS
19  UNDERSHERIFF WITH THE LOS       ) 4.    CAL. LABOR CODE § 1102.5
    ANGELES COUNTY SHERIFF'S        ) 5.    FEHA HARASSMENT
20  DEPARTMENT; GREG THOMPSON       ) 6.    FEHA DISCRIMINATION
    IN HIS INDIVIDUAL CAPACITY      ) 7.    FEHA RETALIATION
21  AND AS A LIEUTENANT WITH THE    ) 8.    FAILURE TO TAKE CORRECTIVE
    LOS ANGELES COUNTY SHERIFF'S    )       ACTION
22  DEPARTMENT; DET. PERKINS, IN    ) 9.    BANE ACT
    HIS INDIVIDUAL CAPACITY AND     ) 10.   MUNICIPAL LIABILITY
23  AS A DETECTIVE WITH THE LOS     ) 11.   VIOLATION OF PUBLIC SAFETY
    ANGELES COUNTY SHERIFF'S        )       OFFICER'S PROCEDURAL BILL
24  DEPARTMENT, and DOES 1-10,      )       OF RIGHTS (POBRA)
    inclusive,                      )
25                                  )
                  Defendants.       )
26  _____  )

27

28

Complaint    Page -1-

COME NOW MICHAEL RATHBUN ("Rathbun") and JAMES SEXTON ("Sexton") (collectively referred to as "Plaintiffs") who demand a jury trial, and seek monetary compensation against Defendants, as follows:

## I. VENUE AND JURISDICTION

1. Competent subject matter jurisdiction and venue exist, in whole or in part, pursuant to the following federal statutes:

   A.   42 U.S.C. §1983;

   B.   42 U.S.C. §1985(2)

   C.   42 U.S.C. §1985(3);

   D.   Federal Civil Rights Jurisdiction: 28 U.S.C. §§1343(1) - (5);

   E.   Federal Question Jurisdiction: 28 U.S.C. §1331;

   F.   Federal Supplemental Jurisdiction: 28 U.S.C. §1367(b); and

   G.   Federal General Venue: 28 U.S.C. §1391(b).

2. Plaintiffs allege that compliance with California Government Code §§ 900, *et seq.*, is preempted by invocation of Federal Question Jurisdiction 28 U.S.C. §1331, and application of *Williams v. Horvath*, 16 Cal.3rd 834 (1976), and *County of Los Angeles v. Superior Court*, 78 Cal. App. 4th 212 (2000). Plaintiffs have alleged claims for relief arising under the Fourth and Fourteenth Amendments to the Constitution and laws of the United States of America.

3. Nevertheless, on or about April 9, 2013, Rathbun filed a government claim with the County of Los Angeles. A true and correct copy of the County's Government Claim is attached hereto as <u>Exhibit "1"</u>. On or about April 9, 2013, Rathbun filed a government claim with the California Labor Commissioner. A true and correct copy of the Labor Commissioner's Government Claim is attached hereto as <u>Exhibit "2"</u>.

4. Similarly, on or about April 16, 2013, Sexton filed a government claim with the County of Los Angeles. A true and correct copy of the County's Government Claim is attached hereto as <u>Exhibit "3"</u>. On or about April 16, 2013, Sexton filed a

1 | government claim with the California Labor Commissioner. A true and correct copy
2 | of the Labor Commissioner's Government Claim is attached hereto as <u>Exhibit "4"</u>.

3 | 5.    On or about April 9, 2013, Rathbun filed a complaint with the Department of Fair
4 | Employment & Housing and received an immediate right to sue letter. A true and
5 | correct copy of the DFEH Complaint and Right to Sue Letter is attached hereto as
6 | <u>Exhibit "5"</u>.

7 | 6.    On or about April 18, 2013, Sexton filed a complaint with the Department of Fair
8 | Employment & Housing and received an immediate right to sue letter. A true and
9 | correct copy of the DFEH Complaint and Right to Sue Letter is attached hereto as
10 | <u>Exhibit "6"</u>.

11 | 7.    Venue is proper in the Central District of California. The injury occurred in the
12 | County of Los Angeles, California.

13 | ## II. PARTIES

14 | 8.    At all times herein, Plaintiff MICHAEL RATHBUN was a resident of the State of
15 | California. At all times herein, Plaintiff JAMES SEXTON was a resident of the
16 | State of California. Plaintiffs' addresses are confidential pursuant to the California
17 | Penal Code.  Plaintiffs are peace officers with the Los Angeles County Sheriff's
18 | Department, a component of defendant COUNTY OF LOS ANGELES.

19 | 9.    At all times mentioned herein, defendant COUNTY OF LOS ANGELES (hereafter
20 | also "COUNTY") was a public entity duly organized and existing under and by
21 | virtue of the laws of the State of California.

22 | 10.    At all times relevant herein, defendant LEROY BACA (hereafter also "BACA")
23 | was a resident of the County of Los Angeles, and Sheriff of the Los Angeles
24 | County Sheriff's Department (hereinafter also "LASD") and an employee, agent
25 | and representative of the County of Los Angeles. At all times relevant hereto, said
26 | defendant was acting within the course and scope of his employment as a sheriff,
27 | and/or policy maker of the Los Angeles County Sheriff's Department, a department

28 |

1   and subdivision of defendant County of Los Angeles.

2   11.   At all times relevant herein, defendant PAUL TANAKA (hereafter also

3   "TANAKA") was a resident of the County of Los Angeles, and Undersheriff of the

4   Los Angeles County Sheriff's Department (hereinafter also "LASD") and an

5   employee, agent and representative of the County of Los Angeles. At all times

6   relevant hereto, said defendant was acting within the course and scope of his

7   employment as an Undersheriff, and/or policy maker of the Los Angeles County

8   Sheriff's Department, a department and subdivision of defendant County of Los

9   Angeles.

10   12.   At all times relevant herein, defendant GREG THOMPSON (hereafter also

11   "THOMPSON"), and DOES 1 through 3 were residents of the County of Los

12   Angeles, and were Sheriff's deputies, lieutenants, detectives, and/or civilian

13   employees, agents and representatives of the Los Angeles County Sheriff's

14   Department (hereinafter also "LASD") and employees, agents and representatives

15   of the County of Los Angeles. At all times relevant hereto, said defendants were

16   acting within the course and scope of their employment as deputies, lieutenants,

17   captains and sheriffs, policy makers, and/or civilian employees of the Los Angeles

18   County Sheriff's Department, a department and subdivision of defendant County of

19   Los Angeles.

20   13.   At all times relevant herein, defendant PERKINS (hereafter also "PERKINS"), and

21   DOES 4 through 6 were residents of the County of Los Angeles, and were Sheriff's

22   deputies, lieutenants, detectives, and/or civilian employees, agents and

23   representatives of the Los Angeles County Sheriff's Department (hereinafter also

24   "LASD") and employees, agents and representatives of the County of Los Angeles.

25   At all times relevant hereto, said defendants were acting within the course and

26   scope of their employment as deputies, detectives, captains and sheriffs, policy

27   makers, and/or civilian employees of the Los Angeles County Sheriff's Department,

28

1     a department and subdivision of defendant County of Los Angeles.

2  14.    At all times relevant herein, defendant LEROY BACA was Los Angeles County

3     Sheriff's Department sheriff and engaged in the conduct alleged herein under color

4     of State Law, and through the auspices of the County of Los Angeles and Los

5     Angeles County Sheriff's Department. Plaintiff alleges that the conduct and actions

6     of BACA as alleged herein occurred during BACA's normal working hours as Los

7     Angeles County Sheriff's Department sheriff or occurred under the pretense that

8     either was acting as a Los Angeles County Sheriff's Department sheriff or was

9     made possible solely because of his position as a Los Angeles County Sheriff's

10    Department deputy.

11  15.   At all times relevant herein, defendant PAUL TANAKA was Los Angeles County

12    Sheriff's Department undersheriff and engaged in the conduct alleged herein under

13    color of State Law, and through the auspices of the County of Los Angeles and Los

14    Angeles County Sheriff's Department. Plaintiff alleges that the conduct and actions

15    of TANAKA as alleged herein occurred during TANAKA's normal working hours

16    as Los Angeles County Sheriff's Department Undersheriff or occurred under the

17    pretense that either was acting as a Los Angeles County Sheriff's Department

18    Undersheriff or was made possible solely because of his position as a Los Angeles

19    County Sheriff's Department deputy. Plaintiff further alleges that TANAKA acted

20    at all times herein under the auspices, direction, command, instruction, and/or

21    control of the Los Angeles County Sheriff's Department, and Sheriff Leroy Baca.

22  16.   At all times relevant herein, defendant GREG THOMPSON , and DOES 1 through

23    3 were Los Angeles County Sheriff's Department lieutenants and engaged in the

24    conduct alleged herein under color of State Law, and through the auspices of the

25    County of Los Angeles and Los Angeles County Sheriff's Department. Plaintiff

26    alleges that the conduct and actions of THOMPSON, and DOES 1 through 3 as

27    alleged herein occurred during THOMPSON's, and DOES 1 through 3's normal

28

1   working hours as Los Angeles County Sheriff's Department lieutenants or occurred

2   under the pretense that either was acting as a Los Angeles County Sheriff's

3   Department lieutenants or were made possible solely because of their position as a

4   Los Angeles County Sheriff's Department deputies.  Plaintiff further alleges that

5   THOMPSON, and DOES 1 through 3 acted at all times herein under the auspices,

6   direction, command, instruction, and/or control of the Los Angeles County Sheriff's

7   Department, Sheriff Leroy Baca, and Undersheriff Paul Tanaka.

8   17.   At all times relevant herein, defendant PERKINS , and DOES 4 through 6 were Los

9   Angeles County Sheriff's Department detectives and engaged in the conduct

10   alleged herein under color of State Law, and through the auspices of the County of

11   Los Angeles and Los Angeles County Sheriff's Department. Plaintiff alleges that

12   the conduct and actions of PERKINS , and DOES 4 through 6 as alleged herein

13   occurred during PERKINS , and DOES 4 through 6's normal working hours as Los

14   Angeles County Sheriff's Department detectives or occurred under the pretense that

15   either was acting as a Los Angeles County Sheriff's Department detectives or were

16   made possible solely because of their position as a Los Angeles County Sheriff's

17   Department deputies.  Plaintiff further alleges that PERKINS , and DOES 4 through

18   6 acted at all times herein under the auspices, direction, command, instruction,

19   and/or control of the Los Angeles County Sheriff's Department, Sheriff Leroy Baca,

20   and Undersheriff Paul Tanaka.

21   18.   At all times relevant herein, defendants DOES 7 through 10, were residents of the

22   County of Los Angeles, and were Sheriff's deputies, sergeants, detectives, captains,

23   lieutenants, sheriffs, and/or civilian employees, agents and representatives of the

24   Los Angeles County Sheriff's Department and employees, agents and

25   representatives of the County of Los Angeles. At all times relevant hereto, said

26   defendants were acting within the course and scope of their employment as officers,

27   sergeants, captains and sheriffs, policy makers, and/or civilian employees of the

28

1    Los Angeles County Sheriff's Department, a department and subdivision of

2    defendant County of Los Angeles. At all times relevant herein, said defendants

3    were acting under color of law, to wit, under the color of the statutes, ordinances,

4    regulations, policies, customs, practices and usages of defendant COUNTY OF

5    LOS ANGELES, its sheriff's department and/or the State of California.

6    19.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as

7    DOE defendants 1 through 10, inclusive, and therefore sues these defendants by

8    such fictitious names. Plaintiff will amend this complaint to allege their true names

9    and capacities when ascertained. Plaintiff is informed and believes and thereon

10    alleges that each of the fictitiously named defendants is responsible in some manner

11    for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged

12    were proximately caused by the acts and/or omissions of said fictitiously named

13    defendants.

14    ## III. FACTUAL ALLEGATIONS

15    20.    Each and every allegation set forth in the preceding paragraphs is incorporated

16    herein by this reference with the same effect as if realleged herein.

17    21.    At all relevant times herein, Rathbun has been a deputy with the Los Angeles

18    County Sheriff's Department ("LASD"). Rathbun followed in his father's footsteps,

19    a retired 35-year LASD veteran.

20    22.    At all relevant times herein, Sexton has been a deputy with the Los Angeles County

21    Sheriff's Department ("LASD"). Sexton's father is presently a chief at LASD and a

22    former sheriff in Alabama.

23    23.    On or about October 2009, Sexton was assigned to Operation Safe Jails ("OSJ").

24    24.    On or about July 2011, Rathbun was assigned to Operation Safe Jails ("OSJ").

25    25.    The primary role of OSJ is gang intelligence gathering with the objective of

26    preventing facility violence between rival gangs, inmates of different races, and the

27    influence of prison gangs on the inmate population.

28

26.     OSJ provides facility and division executives with updated information regarding ongoing trends which affect day-to-day operations of the facilities; thereby, allowing executives to make informed decision. OSJ is recognized as a leader in providing gang intelligence to the law enforcement community.

27.     Specifically, Rathbun and Sexton turned inmates into informants, looking for tips on crimes and gang activity inside the nation's largest jail system. Further, Rathbun and Sexton specialized in dealing with white supremacy jail gangs.

28.     While at OSJ, the unit supervisor was Lt. Greg Thompson. Moreover, OSJ members were told that the unit was one of Assistant Sheriff/Undersheriff Paul Tanaka's operations. Thus, OSJ members were informed that if any issues ever arose, Tanaka's door was always open. On information and belief, Tanaka was kept abreast of all OSJ matters and operations.

29.     On or about August 2011, Lt. Thompson ordered Rathbun, Sexton, and other members of OSJ to transfer and hide a specific inmate, "Anthony Brown." Rathbun and Sexton learned that the inmate was being hidden from the Federal Bureau of Investigation. On information and belief, the order to hide Anthony Brown came from Sheriff Baca and Undersheriff Tanaka in an effort to obstruct a federal investigation.

30.     Increasingly, Thompson ordered OSJ to engage in activities meant to "keep the FBI out of the jails." In fact, discussions were held about wiring interview rooms when FBI agents or informants were present. On information and belief, Thompson was carrying out the directives of Sheriff Baca and Undersheriff Tanaka.

31.     During this period, Rathbun and Sexton were under significant emotional distress as they began to realize the LASD was attempting to thwart federal investigations, obstruct justice, and commit various violations of state and federal law.

32.     To cope with the intense pressure, Rathbun began to develop a dependency on alcohol. In late 2011, Rathbun informed his superiors about his problems. The OSJ

1    superiors voiced their support for Rathbun.

2    33.    On or about February 2012, an informant told Rathbun and Sexton that Deputy Joseph Britton, who was assigned to Men's Central Jail, was engaged in illegal behavior in association with a powerful white gang member (while on-duty and using his powers as a law enforcement official), who was in charge of illicit activity at MCJ. Rathbun and Sexton provided a confidential intelligence memorandum to Lt. Thompson. Moreover, Rathbun had the powerful white gang member moved to high-powered housing.

9    34.    On the same day, Sexton provided Thompson with an analogous memorandum about another prison official, Remington Orr, and improper association with a prison gang.

12    35.    A few days later, Rathbun followed up with Lt. Thompson about the memorandum. Thompson informed Rathbun that he showed the memorandum to Deputy Britton and inquired whether the allegations were true.

15    36.    Rathbun was stunned. The memorandum was unredacted and thus, Britton was informed about Rathbun and Sexton's identities as well as the identity of the informant. Thompson had intentionally placed Rathbun, Sexton, and the informant in danger.

19    37.    On information and belief, Thompson showed Britton the memorandum in order to intimidate Rathbun and Sexton as well as give Britton the heads up and thus, permit Britton to cover-up any illegal activity.

22    38.    In contrast, Thompson forwarded the Orr memo to ICIB, which ensnared Orr in a narcotics sting. Subsequently, Orr was terminated.

24    39.    Britton and Orr were treated completely different. While Orr is black, Britton is Caucasian.

26    40.    News of Rathbun and Sexton's confidential memorandum was disseminated throughout the jail system by Thompson and other LASD personnel. Rathbun and

1        Sexton were now referred to as snitches by LASD deputies and officials.

2 41.   Additionally, LASD deputies and officials began to use inmates against Rathbun

3        and Sexton. An inappropriate relationship exists between certain LASD personnel

4        and various inmate jail gangs, especially white supremacist. LASD personnel use

5        these jail gangs as proxies or agents to retaliate against other LASD deputies and

6        inmates. Within these inappropriate alliances, the gangs are given certain privileges

7        that they are otherwise legally precluded from. Similarly, the gangs provide LASD

8        personnel with certain benefits, which include carrying out certain tasks on behalf

9        of LASD personnel. Thus, these gangs often act under color of law because of

10       powers delegated or provided by LASD.

11 42.   In late February 2012, Sexton was corned in the OSJ office. Two OSJ deputies told

12      Sexton in a threatening manner that he and Rathbun "better shut up or else" about

13      the Britton matter. Both deputies were on-duty, and in department uniform.

14      Officially, LASD deputies are not permitted to wear their firearms in certain parts

15      of jail facilities.  On information and belief, the deputies were following orders

16      from Lt. Thompson, Sheriff Baca and/or Undersheriff Tanaka to intimidate and/or

17      silence Sexton and Rathbun.

18 43.   The OSJ team at Men's Central Jail refused to work or cooperate with Rathbun and

19      Sexton. In fact, MCJ deputies accused Rathbun of "fucking up their program" by

20      moving the powerful white gang member from MCJ. At all relevant times, certain

21      members of OSJ associated with, and cooperated with, certain jail gangs, including

22      partaking in illicit activities. Sheriff Baca and/or Undersheriff Tanaka knew or

23      should have known about these improper relationships, but took no action to stop it

24      and implicitly ratified the improper conduct.

25 44.   Soon thereafter, Rathbun and Sexton's informant was moved without their consent.

26      The informant was moved out of protective custody and into the general population.

27      Consequently, the informant's life was placed in serious jeopardy. After Rathbun

28

1    and Sexton interceded, the MCJ OSJ team had no answer (at least, claimed no

2    answer) as to why the informant was moved out of protective custody.

3    45.   Subsequently, Sexton was informed that Lt. Thompson ordered the move of the

4          informant after Rathbun and Sexton's confidential memorandum. On information

5          and belief, Thompson wanted to neutralize the informant by providing white

6          supremacy gangs with access to him. Moreover, Thompson intended to send

7          Rathbun and Sexton a "message" that bad things would happen (i.e., physical or

8          bodily harm) if Rathbun and Sexton did not backtrack or drop the Britton matter.

9          Sheriff Baca and/or Undersheriff Tanaka knew or should have known about

10         Thompson's actions. On information and belief, Sheriff Baca and/or Undersheriff

11         Tanaka supported and ratified Thompson's misconduct.

12   46.   On or about March 2012, Sexton conducted an interview of a suspect at LASD

13         custody facilities. Besides members of LASD and the inmate, no one else was

14         present. The interview somehow ended up on YouTube. Sexton's identity was

15         publicly disclosed and thus, his well-being placed in jeopardy.

16   47.   Sexton asked Lt. Thompson to investigate the incident, but Thompson replied that

17         Sexton should forget about it. Thompson took no action or any investigation about

18         how an in-custody interview found its way on the internet. On information and

19         belief, LASD personnel, including but not limited to Lt. Thompson, leaked the

20         interview in order to further intimidate Rathbun and Sexton.

21   48.   With the increased stress, Rathbun had a relapse and got into a fender bender.

22         Rathbun was charged with misdemeanor DUI.

23   49.   On or about April 2012, Rathbun sought further assistance at a facility for his

24         drinking. Yet, a video of Rathbun's arrest was posted onto the LASD intranet even

25         though Rathbun's arrest report was booked under a confidential uniform report

26         number. Sheriff Baca and/or Undersheriff Tanaka knew or should have known

27         about the leak. In fact, LASD officials even attempted to leak the video to the media

28

1    in a further effort to discredit Rathbun and ruin his life.

2  50.    Subsequently, "white power" literature was left at Rathbun's home. No other homes had such material distributed and no prior incidents of this nature had previously occurred. Rathbun's home address is confidential because he is a peace officer and thus, his life would be placed in jeopardy if the information was either public or known to certain individuals. Members of LASD are the only individuals with access to such sensitive information. On information and belief, LASD officials, including members of the OSJ teams, used their contacts with white supremacy gangs to threaten Rathbun.

51.    LASD personnel, using jail gangs as their agents, labeled Rathbun and Sexton as "race traitors."

52.    Meanwhile, the LASD continued to cover up the incidents and dismiss Thompson's actions as simply poor judgment. The investigation was under the direct purview of Sheriff Baca.

53.    Meanwhile, an OSJ deputy threatened Sexton and warned that Sexton and Rathbun better keep their mouths shut about Thompson and Britton. The threat was relayed to LASD officials, who take no action. The OSJ deputy was on-duty and in uniform when the threat was delivered. Moreover, the threat was delivered at the direction of Sheriff Baca, Undersheriff Tanaka, and/or Lt. Thompson, in a further effort to silence Rathbun and Sexton.

54.    On a fairly regular basis, Sexton received threats from various deputies, including Lt. Thompson's son, Matt. The message was always the same: Sexton and Rathbun needed to shut up about illegal activity or they would suffer serious harm. Most of these threats were issue while deputies were on-duty, in uniform, and on LASD property. Further, the threats were only carried out through access and opportunity afforded to deputies as a result of their police powers and positions. LASD officials were aware of these threats, yet LASD did nothing and ratified the threatening

behavior. On information and belief, the campaign of intimidation, harassment, and coercion was carried out at the direction of Sheriff Baca, Undersheriff Tanaka, and/or Lt. Thompson.

55. When internal affairs finally began its investigation into the matter, investigators acknowledged that Sexton and Rathbun had well-founded concerns. However, investigators never intended to undertake a good-faith, legitimate investigation. In fact, at one point, investigators were switched when the initial investigator actually seemed to want to investigate.

56. On or about April 2012, right before his IA interview, Sexton received a call from Lt. Thompson. Sexton was off-duty, but Thompson was on-duty. Thompson had access to Sexton's confidential telephone number only because of Thompson's position in law enforcement. Thompson inquired whether Sexton was planning to speak with IA and ICIB. After Sexton answered in the affirmative, Thompson hung up.

57. Sexton informed the IA investigator about Thompson's apparent attempt to intimidate him. Yet, the other IA investigator informed Thompson that Sexton had reported the call.

58. After his IA interview, Lt. Thompson ordered Sexton to come to his office. Sgt. Gutierrez was present. Subsequently, Thompson began interrogating Sexton about Rathbun's status as well as the various IA investigations, including the ones involving Thompson.

59. Later, in May 2012, Sexton was contacted by ICIB investigator, Noe Garcia. Garcia was previously assigned to Century Station and is a member of the Regulators. Garcia refused to inform Sexton whether he was the subject or witness of the ICIB investigation. This was a blatant violation of the Public Safety Officer's Procedural Bill of Rights (POBRA).

60. Days later, Sexton was forced to submit to interrogation by Garcia in Lt.

Thompson's office without legal representation. Again, another violation of POBRA. Garcia claimed to be investigating a 2011 use of force against an inmate with a rich history of fighting with jail officials. The incident had already been throughly investigated and no adverse finding was made. Thus, there was no legitimate reason for this interview in violation of the POBRA.

61. Soon thereafter, Sexton discovered that one of his informants was assaulted by Deputy Camacho. Sexton reported the matter to ICIB. However, the investigation was watered down and the serious incident of violence against an inmate swept under the rug.

62. Moreover, without any notice, Rathbun's DUI charge was increased to a felony. Rathbun's criminal attorney was not notified. Fortunately, Rathbun discovered the new charges and appeared in court. Otherwise, a bench warrant would have been issued for Rathbun and he would have been taken to Men's Central Jail, exposing him to criminals he had been investigating for years.

63. Absolutely, no legal or factual basis ever existed for a felony DUI.

64. On or about June 2012, homicide detectives admitted to Sexton that Lt. Thompson violated numerous laws. Moreover, Sexton and Rathbun were in jeopardy.

65. Soon thereafter, Sexton spoke to Sheriff Baca about the ordeal he and Rathbun were going through. However, Baca was dismissive and unmoved about the situation.

66. In the summer of 2012, Rathbun and Sexton went to the FBI and disclosed various information, including evidence about LASD's violation of various state and/or federal laws. At this time, LASD personnel were under unofficial orders from the department not to speak or cooperate with the FBI. Rathbun and Sexton were under no official duty to report the various legal violations but did so despite directives from LASD to the contrary.

67. In the summer of 2012, Rathbun was suspend without pay. Rathbun plead his case with Chief Yim, who ignored Rathbun's concerns. Numerous members of the

department who committed a DUI are given much greater leniency. On information and belief, LASD officials discovered that Rathbun had spoken to the FBI, and thus, his suspension without pay was retaliation for the disclosure.

68. In contrast, Lt. Thompson was transferred to Narcotics Division. The new assignment was a coveted position. Undersheriff Tanaka made sure Thompson was given the new position.

69. After the Thompson transfer, Sexton was confronted by various armed, on-duty LASD deputies (in uniform) at a training event. The deputies promised Sexton that they "would take care of people" responsible for the Thompson transfer.

70. Subsequently, Sgt. Gutierrez, another Viking, interrogated Sexton about the Thompson transfer.

71. On or about July 2012, Sexton pleaded with Lt. Dempsey and Cmdr. Fender to be transferred out of custody to patrol. Numerous prior requests had been ignored. Sexton did not feel safe in custody. Moreover, patrol offered many more opportunities for promotions, experience, and over time pay. However, Sexton was simply informed that he could not be moved (without further explanation).

72. On or about July 2012, Sexton formally wrote up Deputy Camacho for continued excessive force on inmates.

73. In July 2012, IA investigators claimed Lt. Thompson had simply used poor judgment and did not do anything criminal.

74. On or about August 2012, the Los Angeles Times ran an article on Rathbun and Sexton's plight. Rathbun and Sexton cooperated with the newspaper because LASD was sweeping everything under the rug and the FBI was not providing any meaningful assistance. Rathbun and Sexton hoped they could achieve a certain level of personal security if their dilemma and other issues were made public. Moreover, Rathbun and Sexton felt the public needed to know about the wrongdoing committed by LASD and better understand the problems with the County's jails ran

1    much deeper than the public was being told.

2    75.   Shortly after the Los Angeles Times article, Sheriff Baca personally called Rathbun

3          and set up a meeting with him. On information and belief, Baca and other LASD

4          officials knew or believed Rathbun and Sexton were providing information to the

5          Times.

6    76.   At the meeting with Sheriff Baca, Rathbun expressed his grave concerns about his

7          safety as well as the various legal violations committed by LASD members.

8          However, Baca minimized Rathbun's serious concerns and dismissed them out of

9          hand.

10   77.   Moreover, Baca informed Rathbun that a misdemeanor DUI would not jeopardize

11         his position at LASD. Also, Baca later called Rathbun's father to inform him that

12         the DA, not LASD, was behind the elevation of the charge from misdemeanor DUI

13         to felony DUI.

14   78.   Similarly, Sexton had an analogous and futile meeting with Sheriff Baca.

15   79.   On or about August 2012, Cmdr. Pietrantoni, an individual with a well-documented

16         history of racial insensitivity, interrogated Sexton and demanded to know whether

17         he and Rathbun were speaking to the press, the FBI, and anyone else. Pietrantoni is

18         very close to Sheriff Baca and was handpicked by him to review the jails. In fact,

19         Pietrantoni was about to retire when Baca suddenly promoted him to commander

20         and placed him in custody despite no requisite prior experience.

21   80.   In August 2012, Sexton was unjustifiably chastised by one of the IA investigators

22         from the Thompson investigation during a training session at Men's Central Jail.

23         Moreover, LASD personnel spoke openly about the LA Times article, which they

24         attributed to Rathbun and Sexton.

25   81.   On or about August 2012, Sexton went to Century Station to book evidence. Sexton

26         was incessantly harassed by LASD personnel.

27   82.   On or about August 2012, Deputy Camacho threatened Sexton with bodily harm.

28

83. On or about August 2012, Rathbun and Sexton testified before a federal grand jury. Pursuant to new LASD directives, they informed the Department of their appearance.

84. On or about September 2012, Sexton was going to stop by Temple Station. Lt. Thompson was now assigned to Lakewood. Sgt. Mead ordered Sexton not to enter the station for his own personal safety.

85. Sexton continued to be harassed at work by other LASD personnel.

86. On or about September 2012, ICIB investigators told Sexton that Deputy Camacho had violated the Penal Code, but the Los Angeles District Attorney would never file criminal charges.

87. On or about September 2012, officials at LASD's Palmdale station assured Rathbun that the DA, not station personnel, escalated the DUI charge.

88. On or about October 2012, Sexton interceded to assist an informant from bogus charges of assault on a deputy.

89. On or about October 2012, LASD personnel attempted to write up Sexton for bogus charges.

90. On or about November 2012, Rathbun plead out to misdemeanor DUI. Rathbun had no prior convictions before and has not had any other issues since then.

91. On or about November 2012, Rathbun's Captain told him he will get a 15-30 day suspension.

92. On or about November 2012, an administrative law judge ruled that Rathbun should have been returned to work. LASD vigorously contested the matter.

93. On or about November 2012, Lt. Thompson's son, Deputy Matt Thompson, and another LASD deputy cornered Sexton. The two men informed Sexton that "the boss is aware that Rathbun and he testified in front of the grand jury." But the "boss" did not think he would get indicted, yet Sexton and Rathbun will "answer"

for their testimony. Thompson's son and the other LASD employee delivered their threat while on-duty and in uniform. On information and belief, the threat was conveyed at the direction of Sheriff Baca, Undersheriff Tanaka, and/or Lt. Thompson.

94. On or about late 2012, Rathbun's vehicle was vandalized on LASD property.

95. In late 2012, high-ranking LASD officials expressed concern Lt. Thompson may attempt to kill Sexton and Rathbun.

96. In late 2012, Rathbun discovered that LASD personnel, including Detective PERKINS, were the ones who escalated his DUI charge from a misdemeanor to a felony.

97. In late 2012, IA investigator Bracken attempted to write up Sexton for insubordination because he failed to appear at an interview that he was never notified about.

98. On or about March 2013, high-ranking LASD officials recommended that Rathbun be terminated.

99. However, numerous LASD deputies, including several members of OSJ, have been convicted of DUIs (including more than one), but have never been threatened with termination.

100. In fact, unlike Rathbun, who was moved out of OSJ, several OSJ deputies kept the coveted assignment despite multiple DUIs.

101. Rathbun reached out to Sheriff Baca for an explanation and some guidance, but Baca refused to now meet with Rathbun.

102. Rathbun and Sexton have each been targets of bogus IA investigations, which are merely meant to ruin their careers further. In fact, Rathbun and Sexton have been involved in four internal investigations each. The LASD has a practice and pattern of using internal investigations to retaliate against employees. Sheriff Baca and Undersheriff Tanaka put into place such practices and used it extensively against

1    Plaintiffs.

2  103.  Lt. Thompson is a close confidante of Undersheriff Paul Tanaka. Thompson, like

3         Tanaka, is a tattooed member of the "Vikings." In fact, Tanaka got his "Viking"

4         tattoo when he was a sergeant, which is odd because it is quite rare to have

5         supervisors get such a tattoo.

6  104.  On or about 1991, the Hon. Terry Hatter found the "Vikings" were a racist group of

7         deputies who existed within the Los Angeles County Sheriff's Department and

8         Lynwood Station. *Thomas v. County of Los Angeles*, case no. CV 90-5217.

9         Thompson was a named individual defendant in *Thomas v. County of Los Angeles*.

10        This group had terrorized minority members of the general public by using

11        unjustified force, fabricating evidence, and engaging in cover-ups. On information

12        and belief, Tanaka and Thompson adopted the "Viking" brand of law enforcement.

13  105.  In fact, Tanaka allowed and encouraged the further development of deputy gangs

14        within the LASD. For instance, the Regulators flourished in the Department. When

15        some LASD officials tried to stop these gangs, they were stopped and retaliated

16        against by Tanaka. Similarly, Tanaka  allowed and encouraged deputy gangs in the

17        jails. At various points in time, Tanaka would recite a version of his "working in the

18        gray" message.

19  106.  Tanaka's "working in the gray" is an informal policy that directs LASD members to

20        operate outside the confines of the law, in contravention of state and federal laws.

21        Lt. Thompson and Deputy Britton "work in the gray." LASD officials' attempts to

22        obstruct justice and interfere with federal investigations is pursuant to the "work in

23        the gray" policy.

24  107.  While Tanaka directed/ordered such illegal activities, Sheriff Baca ratified the

25        unlawful actions. Baca has tolerated Tanaka's misdeeds. Baca has done nothing to

26        break up the deputy gang-cliques inside the LASD. Baca has done nothing to

27        combat discrimination, harassment, and retaliation based either on protected

28

1    activities or protected characteristics.

2    108.  In mid-2012, Capt. Patrick Maxwell, after years of complaints about Tanaka's
3          activities and advocacy of unlawful conduct, went public and told the Citizen's
4          Commission on Jail Violence, an entity created by the Los Angeles County Board
5          of Supervisors, the truth about Tanaka. As a result, Maxwell suffered further
6          discrimination, harassment, and retaliation.

7    109.  On or about May 29, 2009, Sergeant Timothy Cooper, a Viking and Regulator
8          threatened Sgt. Mark Moffett by pointing his gun at Moffett, while making death
9          threats. Even after a water-downed internal investigation, LASD officials
10         recommended that Cooper be punished through demotion to deputy. However,
11         Undersheriff Tanaka personally interceded and refused to go along with the
12         recommendation. Instead, Cooper was given a few days off, which could be grieved
13         into simple additional training.

14   110.  The County of Los Angeles has in place, and has ratified customs and practices
15         which permitted and encouraged their deputies to violate state, federal, and/or
16         constitutional rights/laws.

17   111.  Said customs and practices also called for the County of Los Angeles and its
18         Sheriff's Department not to discipline, prosecute, or objectively and/or
19         independently investigate or in any way deal with or respond to known incidents
20         and complaints of wrongful conduct by deputies, the giving of false testimony in
21         trial to cover-up and conceal such wrongful conduct by officers of the Los Angeles
22         County Sheriff's Department, and for the County of Los Angeles to fail to
23         objectively and/or independently investigate or in any way deal with or respond to
24         or the related claims and lawsuits made as a result of such misconduct. Defendant
25         County of Los Angeles is aware of and is deliberately indifferent to a pervasive and
26         widespread pattern and practice within the LASD of concealing known instances of
27         evidence planting, evidence tampering, perjury, falsified police reports, witness

28

1  coercion, excessive force, on-duty criminal acts and on-duty acts of moral turpitude.

2  This pattern and practice was identified and documented by various entities

3  including the ACLU, U.S. Department of Justice, Kolts Commission, Office of

4  Independent Review, Merrick Bobbs, and the Commission on Jail Violence.

### IV. FIRST CLAIM FOR RELIEF
### FIRST AMENDMENT RETALIATION
**[AS TO DEFENDANTS BACA, TANAKA, THOMPSON, PERKINS and DOES 1-6]: 1st AMENDMENT, 42 U.S.C. §1983**

112.  Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if realleged herein.

113.  This action is brought pursuant to 42 U.S.C. §1983 for violation of Plaintiffs' rights under the First Amendment.

114.  Plaintiffs engaged in numerous activities protected under the First Amendment: (1) free speech; (2) petition the government, etc.

    a.    Plaintiffs reported violations of state and federal law to the LASD;

    b.    Plaintiffs reported violations of state and federal law to the FBI;

    c.    Plaintiffs reported violations of state and federal law to the Los Angeles Times;

    d.    Plaintiffs filed complaints with the DFEH, the Labor Commissioner, and the County of Los Angeles.

115.  In retaliation, Defendants engaged in various wrongdoings, including malicious prosecution, suspension without pay, putative transfers, denial of transfers, threats of bodily harm (either directly or through agents), intimidation, coercion, harm to reputation, diminished chances for promotions and better assignments, etc. (as stated more fully above).

116.  Defendants Baca, Tanaka, Thompson and/or Perkins acted under color of law at all applicable times herein.

117.  The acts of Baca, Tanaka, and/or Thompson's subordinates deprived Plaintiffs of

1    their rights under the laws of the United States and the Constitution.

2    118.  Baca, Tanaka, and/or Thompson directed their subordinates in the acts that deprived

3          Plaintiffs of their rights; or Baca, Tanaka, and/or Thompson set in motion a series

4          of acts by subordinates that they knew or reasonably should have known would

5          cause the subordinates to deprive the plaintiffs of these rights; or Baca, Tanaka,

6          and/or Thompson knew, or reasonably should have known, that their subordinates

7          were engaging in these acts and that their conduct would deprive the plaintiffs of

8          these rights; and Baca, Tanaka, and/or Thompson failed to act to prevent their

9          subordinates from engaging in such conduct.

10   119.  Plaintiffs' protected speech/conduct or chilling the plaintiffs' protected

11         speech/conduct was a substantial or motivating factor for the defendants' actions.

12   120.  Plaintiffs suffered personal and bodily injuries, and during said time they suffered,

13         and continue to suffer, severe emotional and psychological pain, suffering, anxiety,

14         depression, anguish, shock, and fear. Further, Plaintiffs will likely be required to

15         hire medical specialists for treatment and therapy for their injuries. Plaintiffs have

16         experienced or likely will suffer with a significant loss of wages and a significant

17         loss of their ability to obtain and maintain gainful employment as a proximate result

18         of the misconduct of all defendants.

19   121.  Because the acts and omissions of defendants and each of them were carried out in

20         a deliberate, cold, callous, intentional and/or unreasonable manner, causing injury

21         and damage to plaintiffs as set forth above, and done with a conscious disregard of

22         Plaintiffs' rights and safety, plaintiffs request the assessment of punitive damages

23         against these defendants in an amount appropriate to punish or set an example of

24         these Defendants.   There are no punitive damages sought against the County which

25         is statutorily immune.

26

27

28

## V. SECOND CLAIM FOR RELIEF
### VIOLATION OF DUE PROCESS RIGHTS THROUGH MALICIOUS PROSECUTION [PLAINTIFF RATHBUN AGAINST DEFENDANTS BACA, TANAKA, THOMPSON,  PERKINS and DOES 1-6]:  4th AMENDMENT, 14th AMENDMENT, 42 U.S.C. §1983 .

122.   Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if realleged herein.

123.   This action is brought pursuant to 42 U.S.C. §1983 and the Fourteenth Amendment of the United States Constitution for violation of Plaintiff's procedural and substantive due process rights and the violation thereof resulting from the malicious prosecution by the defendants named herein.

124.   As delineated above, Plaintiff was wrongfully charged with a felony DUI based upon false charges, statements, police reports, evidence and testimony presented by PERKINS and DOES 4 through 6.

125.   The acts of  Baca, Tanaka, and/or  Thompson's subordinates deprived Plaintiff of his rights under the laws of the United States and the Constitution.

126.   Baca, Tanaka, and/or Thompson directed their subordinates in the acts that deprived Plaintiff of his rights; or Baca, Tanaka, and/or Thompson set in motion a series of acts by subordinates that they knew or reasonably should have known would cause the subordinates to deprive the plaintiff of these rights; or Baca, Tanaka, and/or Thompson knew, or reasonably should have known, that their subordinates were engaging in these acts and that their conduct would deprive the plaintiff of these rights; and Baca, Tanaka, and/or Thompson failed to act to prevent their subordinates from engaging in such conduct.

127.   Said defendants, in violation of Penal Code section 118.1 knowingly filed materially false police reports, made materially false statements to investigators and prosecutors that Plaintiff had violated the California Penal Code, and presented falsified evidence, all for the purpose of having Plaintiff wrongfully, unjustly and falsely charged with felony crimes, and to ensure that Plaintiff would be falsely and

1      wrongfully prosecuted and imprisoned.

2  128.   At no time did said defendants have probable cause to arrest and charge Plaintiff for

3      any felony crimes or to recommend that he be prosecuted for any felonies.

4      Notwithstanding this, with malice and conscious disregard for his rights to due

5      process, said defendants presented the above false evidence and recommended that

6      Plaintiff be charged and prosecuted. Thereafter, they meaningfully participated in

7      his prosecution to ensure his wrongful conviction and wrongful imprisonment.

8  129.   The Los Angeles District Attorney (LADA) decided to file felony charges against

9      Plaintiff. However, LADA did not undertake any independent investigation, but

10      rather, rubber-stamped LASD's fabricated case.

11  130.   As the actual and proximate result of the acts and omissions of said defendants as

12      described herein, Plaintiff was made to lose his liberty as stated above in Section

13      III, this in violation of the Fourteenth Amendment's procedural and substantive due

14      process guarantees. Plaintiff suffered personal and bodily injuries, and he suffered,

15      and continues to suffer, severe emotional and psychological pain, suffering, anxiety,

16      depression, anguish, shock, and fear. Further, Plaintiff will likely be required  to

17      hire medical specialists for treatment and therapy for his injuries. Plaintiff has

18      experienced or likely will suffer with  a significant loss of wages and a significant

19      loss of his ability to obtain and maintain gainful employment as a proximate result

20      of the misconduct of  BACA, TANAKA, THOMPSON,  PERKINS and DOES 1-6,

21      which is alleged herein.

22  131.   The aforementioned acts of said defendants were willful, wanton, malicious and

23      oppressive and said misconduct shocks the conscience thereby justifying the

24      awarding of exemplary and punitive damages as to all non-municipal defendants.

25  **VI. <u>THIRD CLAIM FOR RELIEF</u>**
**CONSPIRACY TO VIOLATE PLAINTIFFS'**
26  **CIVIL RIGHTS**
**[AS TO DEFENDANTS BACA, TANAKA, THOMPSON,  PERKINS and DOES 1-**
27  **6]: 14th AMENDMENT, 42 U.S.C. §1983, 42 U.S.C. §1985.**

28

132. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if realleged herein.

133. This action is brought pursuant to 42 U.S.C. §§1983, 1985.

134. BACA, TANAKA, THOMPSON, PERKINS and DOES 1-6 conspired to deter, by force, intimidation, or threat, Plaintiffs from testifying, cooperating and/or disclosing various violations of state and federal law, freely, fully, and truthfully. Moreover, BACA, TANAKA, THOMPSON, PERKINS and DOES 1-6, conspired to injure Plaintiffs on account of their cooperation with the FBI and truthful testimony before a federal grand jury.

135. BACA, TANAKA, and/or THOMPSON used subordinates such as PERKINS, Deputy Britton, members of OSJ, Matthew Thompson, and other agents including white supremacy groups as well as jail gangs, as part of their conspiracy to silence and harm Plaintiffs for their whistleblowing activities.

136. By virtue of the foregoing, said defendants, and each of them, violated Plaintiffs' procedural and substantive due process rights under the Fourteenth Amendment.

137. Notwithstanding the duties owed to Plaintiffs, and notwithstanding the laws of the state of California and the rights granted to Plaintiffs under the U.S. Constitution, these defendants, and each of them, with deliberate indifference to the constitutional rights of Plaintiffs, failed and refused to prevent the wrongs conspired to be committed against Plaintiffs, despite their ability and duty to do so.

138. Plaintiffs suffered personal and bodily injuries, and they suffered, and continue to suffer, severe emotional and psychological pain, suffering, anxiety, depression, anguish, shock, and fear. Further, Plaintiffs will likely be required to hire medical specialists for treatment and therapy for their injuries. Plaintiffs have experienced or likely will suffer with a significant loss of wages and a significant loss of their ability to obtain and maintain gainful employment as a proximate result of the misconduct of BACA, TANAKA, THOMPSON, PERKINS and DOES 1-6, which

1    is alleged herein.

2    139.   The aforementioned acts of said defendants were willful, wanton, malicious and

3           oppressive and said misconduct shocks the conscience thereby justifying the

4           awarding of exemplary and punitive damages as to all non-municipal defendants.

### VII. FOURTH CLAIM FOR RELIEF
### WHISTLEBLOWER RETALIATION
### [AS TO DEFENDANT COUNTY]: CAL. LABOR CODE § 1102.5.

7    140.   Each and every allegation set forth in the preceding paragraphs is incorporated

8           herein by this reference with the same effect as if realleged herein.

9    141.   Plaintiffs reported violations of state and federal law to the LASD.

10   142.   Plaintiffs reported violations of state and federal law to the FBI.

11   143.   In retaliation, Defendants engaged in various wrongdoings, including malicious

12          prosecution, suspension without pay, putative transfers, denial of transfers, threats

13          of bodily harm (either directly or through agents), intimidation, coercion, harm to

14          reputation, diminished chances for promotions and better assignments, etc. (as

15          stated more fully above).

16   144.   Plaintiffs suffered personal and bodily injuries, and they suffered, and continue to

17          suffer, severe emotional and psychological pain, suffering, anxiety, depression,

18          anguish, shock, and fear. Further, Plaintiffs will likely be required to hire medical

19          specialists for treatment and therapy for their injuries. Plaintiffs have experienced or

20          likely will suffer with a significant loss of wages and a significant loss of their

21          ability to obtain and maintain gainful employment as a proximate result of the

22          misconduct of defendants, which is alleged herein.

### VIII. FIFTH CLAIM FOR RELIEF
### HARASSMENT
### [AS TO ALL DEFENDANTS]: CAL. GOV. CODE § 12920

25   145.   Each and every allegation set forth in the preceding paragraphs is incorporated

26          herein by this reference with the same effect as if realleged herein.

27   146.   Rathbun is a Jewish, Caucasian male. Sexton is a Caucasian male.

28

147. Members of LASD were aware Rathbun is Jewish.

148. After Plaintiffs brought to light wrongdoing by non-Jewish, Caucasian co-workers, they were branded "race traitors" by LASD personnel and their agents, including white supremacist jail gangs. Consequently, Plaintiffs were subjected to unwanted harassing conduct.

149. The harassing conduct ranged from threats of bodily harm to impeding Plaintiffs' ability to carry out their job duties.

150. The harassing conduct was severe or pervasive.

151. A reasonable person with Plaintiffs' protected characteristics in Plaintiffs' circumstances would have considered the environment as hostile. Plaintiffs certainly considered the environment hostile.

152. Lt. Thompson helped create the hostile work environment. As a Viking, Thompson exhibited distaste for non-Caucasians, including Jews. Thompson regularly made derogatory comments about minorities, including Jews. Moreover, Thompson subscribed to the notion that Caucasians, who assisted or associated with minorities and/or opposed improper conduct by other Caucasians, were "race traitors."

153. The LASD and its agents, including Sheriff Baca and Undersheriff Tanaka, were well aware of racial problems, including Thompson's proclivities.

154. Plaintiffs were harmed and the conduct was a substantial factor in causing Plaintiffs' harm.

155. Plaintiffs suffered personal and bodily injuries, and they suffered, and continue to suffer, severe emotional and psychological pain, suffering, anxiety, depression, anguish, shock, and fear. Further, Plaintiffs will likely be required to hire medical specialists for treatment and therapy for their injuries. Plaintiffs have experienced or likely will suffer with a significant loss of wages and a significant loss of their ability to obtain and maintain gainful employment as a proximate result of the misconduct of defendants, which is alleged herein.

# IX. <u>SIXTH CLAIM FOR RELIEF</u>
## DISCRIMINATION
### [AS TO DEFENDANT COUNTY]: CAL. GOV. CODE § 12920

156. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if realleged herein.

157. Rathbun is a Jewish, Caucasian male. Sexton is a Caucasian male.

158. Members of LASD were aware Rathbun was Jewish.

159. After Plaintiffs brought to light wrongdoing by non-Jewish, Caucasian co-workers, they were branded "race traitors" by LASD personnel and their agents, including white supremacist jail gangs.

160. Defendants engaged in various wrongdoings, including malicious prosecution, suspension without pay, putative transfers, denial of transfers, threats of bodily harm (either directly or through agents), intimidation, coercion, harm to reputation, diminished chances for promotions and better assignments, etc. (as stated more fully above).

161. As a Viking, Thompson exhibited distaste for non-Caucasians, including Jews. Thompson regularly made derogatory comments about minorities, including Jews. Moreover, Thompson regularly treated individuals differently based upon their race. For instance, Britton and Orr had committed the same type of misconduct. While Orr was terminated, Britton was protected. Additionally, Thompson subscribed to the notion that Caucasians, who assisted or associated with minorities and/or opposed improper conduct by other Caucasians, were "race traitors."

162. The LASD and its agents, including Sheriff Baca and Undersheriff Tanaka, were well aware of racial problems, including Thompson's proclivities.

163. Plaintiffs were harmed and the conduct was a substantial factor in causing Plaintiffs' harm.

164. Plaintiffs suffered personal and bodily injuries, and they suffered, and continue to suffer, severe emotional and psychological pain, suffering, anxiety, depression,

1    anguish, shock, and fear. Further, Plaintiffs will likely be required to hire medical

2    specialists for treatment and therapy for their injuries. Plaintiffs have experienced or

3    likely will suffer with a significant loss of wages and a significant loss of their

4    ability to obtain and maintain gainful employment as a proximate result of the

5    misconduct of defendants, which is alleged herein.

## X. SEVENTH CLAIM FOR RELIEF
### RETALIATION
6
### [AS TO DEFENDANT COUNTY]: CAL. GOV. CODE § 12920
7

8    165.  Each and every allegation set forth in the preceding paragraphs is incorporated

9          herein by this reference with the same effect as if realleged herein.

10   166.  Plaintiffs pointed out to Defendant that it was treating employees differently based

11         upon race. For instance, Britton and Orr had committed the same type of

12         misconduct. While Orr was terminated, Britton was protected. Orr is black and

13         Britton is white.

14   167.  In response, Defendants engaged in various adverse actions, including malicious

15         prosecution, suspension without pay, putative transfers, denial of transfers, threats

16         of bodily harm (either directly or through agents), intimidation, coercion, harm to

17         reputation, diminished chances for promotions and better assignments, etc. (as

18         stated more fully above).

19   168.  Defendant has a regular practice or custom of retaliating against individuals who

20         point out violations of law.

21   169.  Plaintiffs were harmed and the conduct was a substantial factor in causing

22         Plaintiffs' harm.

23   170.  Plaintiffs suffered personal and bodily injuries, and they suffered, and continue to

24         suffer, severe emotional and psychological pain, suffering, anxiety, depression,

25         anguish, shock, and fear. Further, Plaintiffs will likely be required to hire medical

26         specialists for treatment and therapy for their injuries. Plaintiffs have experienced or

27         likely will suffer with a significant loss of wages and a significant loss of their

28

1    ability to obtain and maintain gainful employment as a proximate result of the

2    misconduct of defendants, which is alleged herein.

3

4                        **XI. EIGHTH CLAIM FOR RELIEF**
                      **FAILURE TO TAKE CORRECTIVE ACTION**
5         **[AS TO DEFENDANT COUNTY]: CAL. GOV. CODE § 12920**

6    171.  Each and every allegation set forth in the preceding paragraphs is incorporated

7          herein by this reference with the same effect as if realleged herein.

8    172.  Defendant had an obligation to take corrective action to prevent further harassment

9          of Plaintiff, but failed to do so in violation of Cal. Gov. Code Sections 12940(k)

10         and 12940(j)(1).  Defendants failed to conduct proper investigations, implement

11         proper policies to prevent discrimination, harassment or retaliation, and failed to

12         properly punish those who engaged in misconduct to deter further such actions in

13         the future.

14   173.   After Plaintiffs complained about and opposed the harassing, discriminatory, and

15         retaliatory conduct set forth above, Defendant COUNTY failed to conduct proper

16         investigations, implement proper policies to prevent discrimination, harassment or

17         retaliation, and failed to take corrective action or to properly punish those who

18         engaged in misconduct, to deter further such actions.

19   174.   As a direct and legal result of the conduct by Defendants towards Plaintiffs,

20         Plaintiffs have suffered economic and non-economic damages in a sum according to

21         proof at time of trial, and in excess of the minimum jurisdiction of this Court.

22                        **XII. NINTH CLAIM FOR RELIEF**
                         **VIOLATION OF BANE ACT**
23        **[AS TO ALL DEFENDANTS]: CAL. CIV. CODE § 52.1**

24   175.  Each and every allegation set forth in the preceding paragraphs is incorporated

25         herein by this reference with the same effect as if realleged herein.

26   176.  Defendants made threats of violence against Plaintiffs causing Plaintiffs to

27         reasonably believe that if they exercised their statutory and/or constitutional rights,

28

1   Defendants would commit violence against them and that Defendants had the

2   apparent ability to carry out the threats.

3   177.   Plaintiffs were harmed.

4   178.   Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

5   **XIII. MUNICIPAL LIABILITY FOR VIOLATION OF CONSTITUTIONAL**
    **RIGHTS**
6   **[AS TO DEFENDANTS BACA & COUNTY OF LOS ANGELES]**

7   179.   Each and every allegation set forth in the preceding paragraphs is incorporated

8   herein by this reference with the same effect as if realleged herein.

9   180.   This action is brought pursuant to 42 U.S.C. §1983 for violation of Plaintiffs' rights

10   under the First, Fourth and Fourteenth Amendments.

11   181.   As indicated in Section III above Defendants Defendants Baca, Tanaka, Thompson,

12   Perkins and Does 1-6, acting within the course and scope of their duties as peace

13   officers of the Los Angeles County Sheriff's Department, deprived Plaintiffs of

14   their rights to free speech as delineated herein above, and thereafter in violation of

15   Plaintiffs' due process rights proceeded to make threats, falsify evidence, submit

16   false police reports and offer perjurious testimony so as to ensure that Plaintiffs

17   would be harmed.

18   182.   At the time of these constitutional violations, defendants BACA and COUNTY OF

19   LOS ANGELES and DOES 7 through 10 had in place, and had ratified customs and

20   practices which permitted and encouraged their deputies to unjustifiably,

21   unreasonably and in violation of the First, Fourth, and Fourteenth Amendments, to

22   threaten, retaliate, and take adverse actions against individuals who engaged in

23   protected activities such as free speech, reporting unlawful conduct, and opposing

24   illegal activities.

25   183.   The acts of the individually named Defendants herein were undertaken pursuant to

26   policies established and instituted by Defendant Baca acting in his official capacity

27   as the Sheriff of Los Angeles County and the County of Los Angeles.

28

184. Said customs and practices also called for the County of Los Angeles and its Sheriff's Department not to discipline, prosecute, or objectively and/or independently investigate or in any way deal with or respond to known incidents and complaints of false arrests, falsification of evidence, the preparation of false police reports to justify such wrongful conduct, and the giving of false testimony in trial to cover-up and conceal such wrongful conduct by officers of the Los Angeles County Sheriff's Department, and for the County of Los Angeles to fail to objectively and/or independently investigate or in any way deal with or respond to or the related claims and lawsuits made as a result of such false arrests and related misconduct. Defendants BACA and COUNTY OF LOS ANGELES and DOES 7 through 10 were aware of and were deliberately indifferent to a pervasive and widespread pattern and practice with the LASD of concealing known instances of evidence planting, evidence tampering, perjury, falsified police reports, witness coercion, excessive force, on-duty criminal acts and on-duty acts of moral turpitude. This pattern and practice was identified and documented by various entities including the ACLU, U.S. Department of Justice, Kolts Commission, Office of Independent Review, Merrick Bobbs, and the Commission on Jail Violence.

185. Said customs and practices called for and led to the refusal of said defendants to investigate complaints of previous incidents of false and unlawful arrests, the filing of false police reports to conceal such misconduct, the falsification of evidence and perjury and, instead, officially claim that such incidents were justified and proper.

186. Said customs and practices called for said defendants, by means of inaction and coverup, to encourage an atmosphere of lawlessness within the sheriff's department and to encourage their deputies to believe that improper arrest of residents of the Los Angeles County or persons present therein, including members of minority groups, the planting of evidence, the submission of false police reports, and the commission of perjury was permissible and to believe that unlawful acts of

1   falsification of evidence and perjury would be overlooked without discipline or

2   other official ramifications.

3   187.   Said customs and practices of said defendants and each of them evidenced a

4   deliberate indifference to the violations of the constitutional rights of Plaintiff. This

5   indifference was manifested by the failure to change, correct, revoke, or rescind or

6   otherwise address said customs and practices in light of prior knowledge by said

7   defendants and their subordinate policymakers of indistinguishably similar

8   incidents of unjustified and unreasonable and unlawful arrests, falsification of

9   evidence, evidence tampering, submission of false police reports and perjury.

10  188.   Deliberate indifference to the civil rights of victims of the LASD's unlawful

11  employment practices, use of threats/intimidation/coercion, unlawful arrests,

12  falsified evidence, false and misleading police reports and false and perjurious

13  testimony was also evidenced by said defendants by their ignoring of the history

14  and pattern of prior civil lawsuits alleging civil rights violations, similar to those

15  alleged herein, arising from such misconduct and the related payment of judgments

16  to such individuals.

17  189.   Deliberate indifference to the civil rights of victims of the LASD's unlawful arrests,

18  racial profiling, racial slurs, falsified evidence, false and misleading police reports

19  and false and perjurious testimony was also evidenced by said defendants by their

20  ignoring findings various entities which found said policies, procedures, customs

21  and practices to be in place, and found that there existed in the Los Angeles

22  Sheriff's Department an environment and atmosphere which condoned unjustified

23  and unreasonable beatings, arrests, falsification of evidence, evidence tampering,

24  submission of false police reports and perjury.

25  190.   Deliberate indifference is also evidenced by an absence of or by maintenance of an

26  inadequate system of tort claims tracking and by maintaining an inadequate system

27  of officer discipline and independent and objective investigation by the County of

28

1    Los Angeles and its sheriff's department which failed to identify and investigate

2    instances of unlawful employment practices, use of threats/intimidation/coercion,

3    false and unlawful arrests, falsification of evidence, submission of false police

4    reports and perjury.  Moreover, the defendants place excessive force complaints

5    against Deputies in jails into files separate and apart from their personnel files, so

6    that on Pitchess motions, many complaints of excessive force, racial profiling, and

7    general lawlessness are concealed from criminal defendants, civil plaintiffs, their

8    lawyers,  review committees and other watch dog groups.

9  191.  Deliberate indifference to the civil rights of victims of the LASD's unlawful

10     employment practices, use of threats/intimidation/coercion, unlawful arrests and

11     falsified evidence was also evidenced by the failure of by said defendants to

12     adequately train and more closely supervise or retrain officers and/or discipline or

13     recommend prosecution of those officers who falsified evidence, tampered with

14     evidence, submitted false and misleading police reports, and/or committed perjury.

15  192.  Other systemic deficiencies of said defendants which indicated, and continue to

16     indicate, a deliberate indifference to the violations of the civil rights by the deputies

17     of the Los Angeles County Sheriff's Department include:

18     a.    preparation of investigative reports designed to vindicate and/or justify false

19        and unlawful arrests;

20     b.    preparation of investigative reports which uncritically rely solely on the word

21        of LASD deputies involved in unlawful arrests or in the planting of evidence

22        and which systematically fail to credit testimony by non-officer witnesses;

23     c.    preparation of investigative reports which omit factual information and

24        physical evidence which contradicts the accounts of the deputies involved;

25     d.    issuance of public statements exonerating officers involved in such incidents

26        prior to the completion of investigations of wrongful arrests;

27     e.    failure to maintain centralized department-wide system for the tracking and

28

1   monitoring tort claims and lawsuits alleging false arrests, planting of

2   evidence, perjury, and abuse of authority individual officers so as to identify

3   those officers who engage in a pattern of abuse of police authority and police

4   misconduct;

5   f.   Protecting Deputies who are part of various Sheriff's Department gangs or

6   cliques, including without limitation the Regulators, Vikings, 3000 boys,

7   2000 boys, 3000 club, Tazmanian Devils, Little Devils, Mexican Mafia, and

8   multiple other gangs, whose membership includes many members of

9   management, including without limitation the Undersheriff;

10   g.   Allowing certain deputies to remain on the department after engaging in acts

11   of racial profiling, racial slurs, stalking, false arrest, battery, excessive force,

12   kidnaping, and various other illegal, immoral and wrongful acts, even after

13   management was aware, or should have been aware of such actions;

14   h.   The Sheriff's Department has an Executive Planning Council (EPC) Meeting

15   every Wednesday at approximately 11:00 a.m., during this meeting, the

16   Sheriff (Bacca) is supposed to meet with the Undersheriff, two Assistant

17   Sheriff's, 11 Chiefs, and a few other members of management (sworn and

18   civilian) to review issues in the department, including the problems set out in

19   this complaint.  However, before the EPC meets each week, there is a

20   meeting hosted by the Undersheriff (Tanaka) who has a tattoo, showing his

21   membership in gangs like the Vikings and/or Regulators.   During this

22   meeting issues are discussed, and certain items, including those involving

23   targeting of individuals and other actions are filtered by Tanaka who decides

24   which information will or will not be shared with Bacca.  This system has

25   been in effect for many years and has been established to try and prevent

26   victims from demonstrating knowledge on the part of Baca of wrongdoing;

27   i.   The Sheriff's Department complies with discovery through the Civil

28

Litigation Unit. However, that unit has for years withheld the production of discovery materials, including Pitchess documents in violation of law in order to protect its wayward officers, and prevent disclosure of wrongdoing.

193. Said defendants also maintained a system of grossly inadequate training pertaining to the lawful making of arrests, police ethics, the law pertaining to searches and seizures, testifying in trial and perjury, the collection of evidence, and the preparation of police reports.

194. Deliberate indifference to the civil rights victims of the LASD's unlawful employment practices, use of threats/intimidation/coercion, false arrests, planting of evidence, and perjury was also evidenced by said defendants' failure to implement an officer discipline system which would conduct meaningful and independent investigations of citizen complaints of unlawful employment practices, use of threats/intimidation/coercion, false arrests, falsified evidence, evidence tampering, authoring and filing of false and misleading police reports, and the presentation of false testimony at trial.

195. Deliberate indifference to the victims of the LASD's unlawful employment practices, use of threats/intimidation/coercion, falsified evidence, false and misleading police reports and false and perjurious testimony was also evidenced by said defendants implementing a practice and custom within the Los Angeles County Sheriff's department of permitting officers of the Los Angeles County Sheriff's department to engage in unlawful activities while on duty, such as the theft and sale of narcotics and drugs, theft, assaults, batteries, and other crimes of moral turpitude.

196. The foregoing acts, omissions, and systemic deficiencies are practices and customs of said defendants and such caused, permitted and/or allowed under official sanction Defendants Baca, Tanaka, Thompson, Perkins and Does 1-6 to be unaware of, or intentionally overlook and ignore, the rules and laws governing employment practices, the falsification of evidence or the tampering with evidence, the

submission of false police reports and the commission of perjury in criminal trials. The foregoing acts, omissions, and systemic deficiencies are practices and customs of said defendants and such caused, permitted and/or allowed under official sanction said sheriff deputy defendants to believe that unlawful employment practices are entirely within the discretion of the officer and that improper and unlawful arrests, evidence falsification, filing of false and misleading police reports, and the commission of perjury would not be objectively, thoroughly and/or properly investigated, all with the foreseeable result that defendants' officers take retaliatory adverse actions, and falsify evidence, submit false and misleading police reports, and commit perjury, and thereby violate the civil rights of the citizens of this state with whom said officers would come into contact with.

197. As a result of the aforementioned acts, omissions, systematic deficiencies, customs and practices, Defendants Baca, Tanaka, Thompson, Perkins and Does 1-6, developed and implemented a plan to retaliate against Plaintiffs.

198. Plaintiffs suffered personal and bodily injuries, and during said time they suffered, and continue to suffer, severe emotional and psychological pain, suffering, anxiety, depression, anguish, shock, and fear. Further, Plaintiffs will likely be required to hire medical specialists for treatment and therapy for their injuries. Plaintiffs have experienced or likely will suffer with a significant loss of wages and a significant loss of their ability to obtain and maintain gainful employment as a proximate result of the misconduct of all defendants.

## XIV. <u>ELEVENTH CLAIM FOR RELIEF</u>
## VIOLATION OF PUBLIC SAFETY OFFICER'S PROCEDURAL BILL OF RIGHTS (POBRA)
## [AS TO DEFENDANT COUNTY]: CAL. GOV. CODE § 3300, et seq.

199. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if realleged herein.

200. At all relevant times, Plaintiffs were peace officers.

201. Plaintiffs have been forced to submit to interrogations without notice of the charges and without legal representation, including within the last six months.

202. Defendant has taken putative action against Plaintiffs for their exercise of rights given under POBRA.

203. On information and belief, Defendant has search Plaintiffs' storage or locker areas with Plaintiffs' presence or knowledge.

204. Defendants violated POBRA as to Plaintiffs causing them damages. Plaintiffs seek statutory civil penalties, attorneys fees, litigation costs and damages for all harm caused to Plaintiffs by defendants. *See Cal. Gov. Code* § 3309.5.

WHEREFORE, Plaintiffs pray for the following:

1. Loss of earnings and back pay including any increased tax liability thereon;

2. Loss of future earnings, promotions, opportunities to promote, front pay and all other employment benefits, such as pension rights;

3. All other lost pension, insurance and other employment benefits;

4. Medical, hospital and psychological bills, including past, present and future bills;

5. General damages (pain, suffering, emotional distress and other non economic damages);

6. Litigation costs;

7. Attorneys fees;

8. Civil Penalties as authorized by statutes set out herein above;

9. Interest;

10. Damages for increased income tax payments; and

11. Any other relief or damages allowed by law, or statutes not set out above and such further relief as the Court deems just and proper at conclusion of trial.

1    Dated: April 19, 2013                    Respectfully Submitted,
                                              Law Offices of Goldberg & Gage
2                                             A Partnership of Professional Law Corporations

3                                             By _____

4                                                 Bradley C. Gage
                                                  Milad Sadr
5                                             Attorneys for Plaintiffs

6

O:\R\RATHBUN & SEXTON V. COUNTY OF LOS ANGELES\PLEADINGS\COMPLAINT\04-19-13 Complaint, final.wpd

"Exhibit 1"

Terry M. Goldberg*



LAW OFFICES
GOLDBERG & GAGE
A Partnership of Professional Law Corporations

Bradley C. Gage*

Milad Sadr

*A PROFESSIONAL LAW CORPORATION

*A PROFESSIONAL LAW CORPORATION

23002 VICTORY BOULEVARD ~ WOODLAND HILLS, CA 91367 ~ (818) 340-9252 ~ FAX (818) 340-9088
Email: tgoldberg@goldbergandgage.com        Email: bgage@goldbergandgage.com

April 9, 2013

**Via Certified Mail, Return Receipt Requested**
**7012 0470 0001 4964 7417**

County of Los Angeles
Executive Officer, Board of Supervisors
500 West Temple St.
Attn: Claims, Room 383
Kenneth Hahn Hall of Administration
Los Angeles, California  90012

Re:    **Government Claim Michael Rathbun**

Dear Sir or Madam:

Please consider this a notice of governmental claim, and to the extent any such claims are more than six months old, as an application for a late claim  pursuant to <u>California Government Code</u>, Section 911.4.  To the extent applicable, please also consider this a supplemental governmental claim.

A.    **NAME OF THE CLAIMANTS:**

Michael Rathbun

B.    **ADDRESS TO SEND ALL NOTICES:**

Law Offices of Goldberg & Gage, 23002 Victory Blvd., Woodland Hills, CA 91367.

C.    **THE DATE, PLACE AND OTHER CIRCUMSTANCES OF THE OCCURRENCE OR TRANSACTIONS WHICH GIVE RISE TO THE CLAIMS ASSERTED:**

Retaliation, discrimination, harassment under the Fair Employment and Housing Act
Whistle Blower Retaliation
Violation of POBRA.
Failure to take corrective action.
42 U.S.C. § 1983

While assigned to Operation Safe Jails (OSJ), Deputy Rathbun reported numerous violations of federal and state law to the Los Angeles County Sheriff's Department. In retaliation,

Governmental Claim
April 9, 2013
Page 2

the LASD took numerous adverse actions against Rathbun, including several within the last six months. After Rathbun disclosed said violations to federal authorities, the LASD intensified its retaliation against him, including threatening him with termination as well as threats of bodily injury and/or death.

**D.      GENERAL DESCRIPTION OF THE INJURY, DAMAGE OR LOSS INCURRED.**

General, special (economic and non economic) damages and punitive including without limitations: damages for potential  medical treatment; psychological treatment; psychiatric treatment; loss of earnings opportunities and future earning opportunities; loss of reputation; embarrassment and humiliation.   Attorneys fees, and future attorneys fees, litigation costs and experts charges all in a sum to be proven at time of trial and such other damages as presented at trial.  Plaintiff also suffered job loss, lost opportunities, retaliation preventing him from other job opportunities.  Lost reputation, damages to reputation, and lost interest and such other damages as determined at time of trial.

**E.      NAME OF PUBLIC EMPLOYEES CAUSING THE INJURY, DAMAGE OR LOSS TO COMPLAINANTS INCLUDE BUT ARE NOT LIMITED TO THE FOLLOWING:**

Sheriff Baca; Undersheriff Tanaka; Lt. Greg Thompson.

**F.      THE AMOUNT OF CLAIMED DAMAGES EXCEEDS $10,000 AND JURISDICTION WILL BE PROPER IN LOS ANGELES SUPERIOR COURT.**

If you contend this is not the proper location for a Governmental Claim, please advise of the proper address.  Further, if County  contends  there are any administrative claims or remedies not pursued by complainant, please advise so that we can fulfill any administrative remedy requirements now.  Thank you.

Very truly yours,
Law Offices of Goldberg & Gage
A Partnership of Professional Law Corporations

By Milad Sadr

O:\R\RATHBUN, MICHAEL V. COUNTY OF LOS ANGELES\GOVT. CLAIM\04-09-13 govt claim.wpd



"Exhibit 2"

Terry M. Goldberg*



LAW OFFICES
GOLDBERG & GAGE
A Partnership of Professional Law Corporations

Bradley C. Gage*

Milad Sadr

*A PROFESSIONAL LAW CORPORATION

*A PROFESSIONAL LAW CORPORATION

23002 VICTORY BOULEVARD ~ WOODLAND HILLS, CA 91367 ~ (818) 340-9252 ~ FAX (818) 340-9088
Email: tgoldberg@goldbergandgage.com        Email: bgage@goldbergandgage.com

April 9, 2013

**Via Certified Mail, Return Receipt Requested**
**7012 0470 0001 4964 7400**

Division of Labor Standards Enforcement
Retaliation Complaint Investigation Unit
2031 Howe Ave., Ste. 100
Sacramento, CA 95825

Re:    **Claim of Deputy Michael Rathbun**

Dear Madam or Sir:

Please consider this a notice of claim for exhaustion of any potential jurisdictional requirements.

**A.     NAME OF THE CLAIMANTS:** Michael Rathbun, c/o Law Offices of Goldberg and Gage, 23002 Victory Blvd., Woodland Hills, CA 91367.

**B.     ADDRESS TO SEND ALL NOTICES:**

Law Offices of Goldberg & Gage, 23002 Victory Blvd., Woodland Hills, CA 91367.

**C.     THE DATE, PLACE AND OTHER CIRCUMSTANCES OF THE OCCURRENCE OR TRANSACTIONS WHICH GIVE RISE TO THE CLAIMS ASSERTED:**

While assigned to Operation Safe Jails (OSJ), Deputy Rathbun reported numerous violations of federal and state law to the Los Angeles County Sheriff's Department. In retaliation, the LASD took numerous adverse actions against Rathbun, including several within the last six months. After Rathbun disclosed said violations to federal authorities, the LASD intensified its retaliation against him, including threatening him with termination as well as threats of bodily injury and/or death.

**D.     GENERAL DESCRIPTION OF THE INJURY, DAMAGE OR LOSS INCURRED.**

General, special (economic and non economic) damages and punitive including without

Governmental Claim
April 9, 2013
Page 2

limitations: damages for potential medical treatment; psychological treatment; psychiatric treatment; loss of earnings opportunities and future earning opportunities; loss of reputation; embarrassment and humiliation.   Attorneys fees, and future attorneys fees, litigation costs and experts charges all in a sum to be proven at time of trial and such other damages as presented at trial.  Plaintiff also suffered job loss, lost opportunities, retaliation preventing him from other job opportunities.  Lost reputation, damages to reputation, and lost interest and such other damages as determined at time of trial.

**E.      NAME OF PUBLIC EMPLOYEES CAUSING THE INJURY, DAMAGE OR LOSS TO COMPLAINANTS INCLUDE BUT ARE NOT LIMITED TO THE FOLLOWING:**

Sheriff Baca; Undersheriff Tanaka; Lt. Greg Thompson.

**F.      THE AMOUNT OF CLAIMED DAMAGES EXCEEDS $10,000 AND JURISDICTION WILL BE PROPER IN LOS ANGELES SUPERIOR COURT.**

        If you contend this is not the proper location for a Governmental Claim, please advise of the proper address.  Further, if County contends there are any administrative claims or remedies not pursued by complainant, please advise so that we can fulfill any administrative remedy requirements now.  Thank you.

Very truly yours,
Law Offices of Goldberg & Gage
A Partnership of Professional Law Corporations

By Milad Sadr

O:\R\RATHBUN, MICHAEL V. COUNTY OF LOS ANGELES\GOVT. CLAIM\04-09-13 govt claim to labor commissioner.wpd



**"Exhibit 3"**



Terry M. Goldberg*

LAW OFFICES
GOLDBERG & GAGE
A Partnership of Professional Law Corporations

Bradley C. Gage*

Milad Sadr

*A PROFESSIONAL LAW CORPORATION                    *A PROFESSIONAL LAW CORPORATION

23002 VICTORY BOULEVARD ~ WOODLAND HILLS, CA 91367 ~ (818) 340-9252 ~ FAX (818) 340-9088
Email: tgoldberg@goldbergandgage.com          Email: bgage@goldbergandgage.com

April 16, 2013

**Via Certified Mail, Return Receipt Requested**
7012 0470 0001 4964 7479

County of Los Angeles
Executive Officer, Board of Supervisors
500 West Temple St.
Attn: Claims, Room 383
Kenneth Hahn Hall of Administration
Los Angeles, California   90012

Re:   **Government Claim James Sexton**

Dear Sir or Madam:

Please consider this a notice of governmental claim, and to the extent any such claims are more than six months old, as an application for a late claim pursuant to California Government Code, Section 911.4. To the extent applicable, please also consider this a supplemental governmental claim.

A.   **NAME OF THE CLAIMANTS:**

James Sexton

B.   **ADDRESS TO SEND ALL NOTICES:**

Law Offices of Goldberg & Gage, 23002 Victory Blvd., Woodland Hills, CA 91367.

C.   **THE DATE, PLACE AND OTHER CIRCUMSTANCES OF THE OCCURRENCE OR TRANSACTIONS WHICH GIVE RISE TO THE CLAIMS ASSERTED:**

Whistle Blower Retaliation
Violation of POBRA.
Failure to take corrective action.
42 U.S.C. § 1983

While assigned to Operation Safe Jails (OSJ), Deputy Sexton reported numerous violations of federal and state law to the Los Angeles County Sheriff's Department. In retaliation, the LASD took numerous adverse actions against Sexton, including several within the last six

Governmental Claim
April 16, 2013
Page 2

months. After Sexton disclosed said violations to federal authorities, the LASD intensified its retaliation against him, including threatening him with threats of bodily injury and/or death.

**D.     GENERAL DESCRIPTION OF THE INJURY, DAMAGE OR LOSS INCURRED.**

General, special (economic and non economic) damages and punitive including without limitations: damages for potential medical treatment; psychological treatment; psychiatric treatment; loss of earnings opportunities and future earning opportunities; loss of reputation; embarrassment and humiliation. Attorneys fees, and future attorneys fees, litigation costs and experts charges all in a sum to be proven at time of trial and such other damages as presented at trial. Plaintiff also suffered job loss, lost opportunities, retaliation preventing him from other job opportunities. Lost reputation, damages to reputation, and lost interest and such other damages as determined at time of trial.

**E.     NAME OF PUBLIC EMPLOYEES CAUSING THE INJURY, DAMAGE OR LOSS TO COMPLAINANTS INCLUDE BUT ARE NOT LIMITED TO THE FOLLOWING:**

Sheriff Baca; Undersheriff Tanaka; Lt. Greg Thompson.

**F.     THE AMOUNT OF CLAIMED DAMAGES EXCEEDS $10,000 AND JURISDICTION WILL BE PROPER IN LOS ANGELES SUPERIOR COURT.**

If you contend this is not the proper location for a Governmental Claim, please advise of the proper address. Further, if County contends there are any administrative claims or remedies not pursued by complainant, please advise so that we can fulfill any administrative remedy requirements now. Thank you.

Very truly yours,
Law Offices of Goldberg & Gage
A Partnership of Professional Law Corporations

By Milad Sadr

O:\R\RATHBUN, MICHAEL V. COUNTY OF LOS ANGELES\GOVT. CLAIM\04-16-13 govt claim - Sexton.wpd



"Exhibit 4"

Terry M. Goldberg\*



Bradley C. Gage\*

LAW OFFICES

**GOLDBERG & GAGE**

A Partnership of Professional Law Corporations

Milad Sadr

\*A PROFESSIONAL LAW CORPORATION

\*A PROFESSIONAL LAW CORPORATION

23002 VICTORY BOULEVARD ~ WOODLAND HILLS, CA 91367 ~ (818) 340-9252 ~ FAX (818) 340-9088
Email: tgoldberg@goldbergandgage.com       Email: bgage@goldbergandgage.com

April 16, 2013

**<u>Via Certified Mail, Return Receipt Requested</u>**
7012 0470 0001 4964 7509

Division of Labor Standards Enforcement
Retaliation Complaint Investigation Unit
2031 Howe Ave., Ste. 100
Sacramento, CA 95825

  Re: **Claim of Deputy James Sexton**

Dear Madam or Sir:

  Please consider this a notice of claim for exhaustion of any potential jurisdictional requirements.

**A.** **NAME OF THE CLAIMANTS:** James Sexton, c/o Law Offices of Goldberg and Gage, 23002 Victory Blvd., Woodland Hills, CA 91367.

**B.** **ADDRESS TO SEND ALL NOTICES:**

  Law Offices of Goldberg & Gage, 23002 Victory Blvd., Woodland Hills, CA 91367.

**C.** **THE DATE, PLACE AND OTHER CIRCUMSTANCES OF THE OCCURRENCE OR TRANSACTIONS WHICH GIVE RISE TO THE CLAIMS ASSERTED:**

  While assigned to Operation Safe Jails (OSJ), Deputy Sexton reported numerous violations of federal and state law to the Los Angeles County Sheriff's Department. In retaliation, the LASD took numerous adverse actions against Sexton, including several within the last six months. After Sexton disclosed said violations to federal authorities, the LASD intensified its retaliation against him, including threatening him with threats of bodily injury and/or death.

**D.** **GENERAL DESCRIPTION OF THE INJURY, DAMAGE OR LOSS INCURRED.**

  General, special (economic and non economic) damages and punitive including without

Governmental Claim
April 16, 2013
Page 2

limitations: damages for potential medical treatment; psychological treatment; psychiatric treatment; loss of earnings opportunities and future earning opportunities; loss of reputation; embarrassment and humiliation.  Attorneys fees, and future attorneys fees, litigation costs and experts charges all in a sum to be proven at time of trial and such other damages as presented at trial.  Plaintiff also suffered job loss, lost opportunities, retaliation preventing him from other job opportunities.  Lost reputation, damages to reputation, and lost interest and such other damages as determined at time of trial.

E.      NAME OF PUBLIC EMPLOYEES CAUSING THE INJURY, DAMAGE OR
        LOSS TO COMPLAINANTS INCLUDE BUT ARE NOT LIMITED TO THE
        FOLLOWING:

Sheriff Baca; Undersheriff Tanaka; Lt. Greg Thompson.

F.      THE AMOUNT OF CLAIMED DAMAGES EXCEEDS $10,000 AND
        JURISDICTION WILL BE PROPER IN LOS ANGELES SUPERIOR COURT.

        If you contend this is not the proper location for a Governmental Claim, please advise of the proper address.  Further, if County contends there are any administrative claims or remedies not pursued by complainant, please advise so that we can fulfill any administrative remedy requirements now.  Thank you.

                        Very truly yours,
                        Law Offices of Goldberg & Gage
                        A Partnership of Professional Law Corporations

                        By Milad Sadr

O:\R\RATHBUN, MICHAEL V. COUNTY OF LOS ANGELES\GOVT. CLAIM\04-16-13 govt claim to labor commissioner - Sexton.wpd

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com™

OFFICIAL USE

| | |
|---|---|
| Postage | $ .46 |
| Certified Fee | 3.10 |
| Return Receipt Fee (Endorsement Required) | 2.55 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.11 |

Postmark Here

7012 0470 0001 4964 7509

Sent To
Division of Labor Retaliation Comp. Unit
Street, Apt. No.;
or PO Box No. 2031 Howe Ave., Ste 100
City, State, ZIP+4
Sacramento, CA 95825

PS Form 3800, August 2006          See Reverse for Instructions

"Exhibit 5"

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY

GOVERNOR EDMUND G. BROWN JR.

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

DIRECTOR PHYLLIS W. CHENG

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 | Videophone (916) 226-5285 | TDD (800) 700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

April 09, 2013

RE: 106822-47532  - Rathbun Michael - Right To Sue

Notice of Filing of Discrimination Complaint

Enclosed is a copy of a complaint that has been filed with the Department of Fair
Employment and Housing (DFEH) in accordance with Government Code section 12960.
This constitutes service of the complaint pursuant to Government Code section 12962.
Complainant has requested an authorization to file a lawsuit. This complaint is not being
investigated and is being closed immediately.  A copy of the closing letter and right to
sue is enclosed for your records.

NO RESPONSE TO DFEH IS REQUESTED OR REQUIRED.

Please see the next page for the Respondent(s) name and address

Page 1/2

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY

GOVERNOR EDMUND G. BROWN JR.

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

DIRECTOR PHYLLIS W. CHENG

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 | Videophone (916) 226-5285 | TDD (800) 700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

April 09, 2013

RE: 106822-47532  - Rathbun Michael - Right To Sue

### Notice of Filing of Discrimination Complaint

Agent for Service for  Los Angeles County
Sheriff`s Department
4700 Ramona Blvd.
Los Angeles CA 91754

Paul Tanaka Los Angeles County
Sheriff`s Department
4700 Ramona Blvd.
Los Angeles CA 91754

Greg Thompson Los Angeles County Sheriff`s
Department
4700 Ramona Blvd.
Los Angeles CA 91754

Leroy Baca Los Angeles County
Sheriff`s Department
4700 Ramona Blvd.
Los Angeles CA 91754



# CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
## EMPLOYMENT

COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

DFEH INQUIRY NUMBER:
106822-47532

COMPLAINANT NAME:
Michael Rathbun

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

| RESPONDENT NAME: | RESPONDENT ADDDRESS:<br>4700 Ramona Blvd. Los Angeles, CA, 91754 | TELEPHONE NUMBER: |
|---|---|---|
| Los Angeles County Sheriff's Department | | (323) 526-5000 |

| AGENT FOR SERVICE: | AGENT FOR SERVICE ADDRESS: | CITY/STATE/ZIP: |
|---|---|---|
| ' | , | ' ' |

| NO. OF EMPLOYEES/MEMBERS: | DATE MOST RECENT DISCRIMINATION TOOK PLACE: | TYPE OF EMPLOYER: |
|---|---|---|
| 500 | Apr 09, 2013 | State/Local Govt |

CO-RESPONDENT(S):

| NAME | ADDRESS |
|---|---|
| Paul Tanaka<br>Los Angeles County Sheriff's Department | 4700 Ramona Blvd.  Los Angeles  CA 91754 |
| Greg Thompson | 4700 Ramona Blvd.  Los Angeles  CA 91754 |
| Los Angeles County Sheriff's Department<br>Leroy BacaLos Angeles County Sheriff's Department | 4700 Ramona Blvd.  Los Angeles  CA 91754 |

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right to sue. I understand that if I want a federal right to sue notice, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure and Right to Sue," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

By submitting this complaint, I am declaring under penalty of perjury under the laws of the State of California that, to the best of my knowledge, all information contained in this complaint is true and correct, except matters stated on my information and belief, and I declare that those matters I believe to be true.

DATED April 09, 2013 At Woodland Hills    VERIFIED BY:Bradley C. Gage, Attorney

DFEH-300-030 (07/12)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

DATE FILED: Apr 09, 2013
MODIFIED: Apr 09, 2013

STATE OF CALIFORNIA

Page 1/2



# CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
EMPLOYMENT

COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

I ALLEGE THAT I EXPERIENCED:
Discrimination, Harassment, Retaliation

ON OR BEFORE: Apr 09, 2013

BECAUSE OF MY ACTUAL OR PERCEIVED: Ancestry, Association with a member of a protected class, Color, Engagement in Protected Activity, National Origin - Including language use restrictions, Race, Religion

AS A RESULT, I WAS:    Demoted, Denied a work environment free of discrimination and/or retaliation

STATE WHAT YOU BELIEVE TO BE THE REASON(S) FOR DISCRIMINATION:

DFEH-300-030 (07/12)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

DATE FILED: Apr 09, 2013
MODIFIED: Apr 09, 2013

STATE OF CALIFORNIA

Page 2/2



STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                    GOVERNOR EDMUND G. BROWN JR.

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING                    DIRECTOR PHYLLIS W. CHENG

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684  | Videophone (916) 226-5285 | TDD (800) 700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

Apr 09, 2013

Michael Rathbun

c/o: Law Offices of Goldberg Gage 23002 Victory Blvd.

Woodland Hills, CA 91367


RE: 106822-47532  - Rathbun Michael - Right To Sue

Notice of Case Closure and Right to Sue


Dear Michael Rathbun:

This letter informs you that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective Apr 09, 2013 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,



Department of Fair Employment and Housing



cc:  , Agent for Service for Los Angeles County Sheriff's Department

Paul Tanaka                                        Greg Thompson

Los Angeles County Sheriff's DepartmentLos Angeles County Sheriff's Department
Leroy Baca

Los Angeles County Sheriff's Department

"Exhibit 6"



STATE OF CALIFORNIA I Department of Fair Employment and Housing                     EMPLOYMENT RIGHT TO SUE

# COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

DFEH MATTER NUMBER
109866-48684

COMPLAINANT
James Sexton

NAMED IS THE EMPLOYER, PERSON, AGENCY, ORGANIZATION OR GOVERNMENT ENTITY WHO DISCRIMINATED AGAINST ME

| RESPONDENT | ADDRESS | PHONE |
|---|---|---|
| Los Angeles County Sheriff`s Department | 4700 Ramona Blvd.  Los Angeles CA 91754 | (323) 526-5000 |

| AGENT FOR SERVICE | ADDRESS | PHONE |
|---|---|---|

| NO. OF EMPLOYEES | MOST RECENT DISCRIMINATION TOOK PLACE | TYPE OF EMPLOYER |
|---|---|---|
| 500 | Apr 18, 2013 | State/Local Govt |

| CO-RESPONDENT(S) | ADDRESS |
|---|---|
| Leroy Baca Los Angeles County Sheriff`s Department | 4700 Ramona Blvd.  Los Angeles  CA 91754 |
| Paul Tanaka Los Angeles County Sheriff`s Department | 4700 Ramona Blvd.  Los Angeles  CA 91754 |
| Greg Thompson Los Angeles County Sheriff`s Department | 4700 Ramona Blvd.  Los Angeles  CA 91754 |



STATE OF CALIFORNIA I Department of Fair Employment and Housing                    EMPLOYMENT RIGHT TO SUE

## COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

DFEH MATTER NUMBER
**109866-48684**

| | |
|---|---|
| I ALLEGE THAT I EXPERIENCED | Discrimination, Harassment, Retaliation |
| ON OR BEFORE | Apr 18, 2013 |
| BECAUSE OF MY | Ancestry, Association with a member of a protected class, Color, Engagement in Protected Activity, National Origin - including language use restrictions, Race |
| AS A RESULT, I WAS | Denied a work environment free of discrimination and/or retaliation, Denied or forced to transfer |

STATEMENT OF FACTS



STATE OF CALIFORNIA I Department of Fair Employment and Housing                    EMPLOYMENT RIGHT TO SUE

## COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

DFEH MATTER NUMBER
109866-48684

SIGNED UNDER PENALTY OF PERJURY

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right to sue. I understand that if I want a federal right to sue notice, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure and Right to Sue," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

By submitting this complaint, I am declaring under penalty of perjury under the laws of the State of California that, to the best of my knowledge, all information contained in this complaint is true and correct, except matters stated on my information and belief, and I declare that those matters I believe to be true.

Verified by Bradley Gage   and dated on April 18, 2013 at Woodland Hills, CA.

STATE OF CALIFORNIA | State and Consumer Services Agency

GOVERNOR EDMUND G. BROWN JR.
DIRECTOR PHYLLIS W. CHENG

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | Videophone 916-226-5285 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

Apr 18, 2013

James Sexton
c/o: Law Offices of Goldberg Gage 23002 Victory Blvd.
Woodland Hills, CA 91367

RE: **Notice of Case Closure and Right to Sue**
    DFEH Matter Number: 109866-48684
    Right to Sue: Sexton / Los Angeles County Sheriff's Department

Dear James Sexton:

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective April 11, 2013 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

**This letter is also your Right to Sue notice.** According to Government Code section 12965, subdivion (b), a civil action may be rought under the provisions of the Fair employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commision (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

Enclosures

cc:   Agent for Service for Los Angeles County Sheriff's Department
      Leroy Baca
      Paul Tanaka
      Greg Thompson

STATE OF CALIFORNIA | State and Consumer Services Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | Videophone 916-226-5285 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

GOVERNOR EDMUND G. BROWN JR
DIRECTOR PHYLLIS W. CHENG

April 18, 2013

RE: **Notice of Filing of Discrimination Complaint**
    DFEH Matter Number: 109866-48684
    Right to Sue: Sexton / Los Angeles County Sheriff's Department

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair employment and Housing (DFEH) in accordance with Government code section 12960. This constitutes service of the complaint pursuant to Government Code Section 12962. The complainant has requested an authorization to file a lawsuit. This completed is not being investigated by the DFEH and is being closed immmediately. A copy of the closing letter and Right to Sue notice is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

**This letter is for informational purposes only. No response to DFEH is requested or required.**

Sincerely,

Department of Fair Employment and Housing